1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

LINDA M. LEWIS,                    ) 1: 04-cv-5646-SMS
                                   )
            Plaintiff,             ) DECISION AND ORDER DENYING
                                   ) PLAINTIFF'S SOCIAL SECURITY
                                   ) COMPLAINT (DOC. 1)
      v.                           )
                                   ) ORDER DIRECTING THE ENTRY OF
JO ANNE B. BARNHART,               ) JUDGMENT FOR DEFENDANT JO ANNE B.
Commissioner of Social             ) BARNHART, COMMISSIONER OF SOCIAL
Security,                          ) SECURITY, AND AGAINST PLAINTIFF
                                   ) LINDA M. LEWIS
            Defendant.             )
                                   )
_____)

18   Plaintiff is proceeding with counsel and in forma pauperis

19 with an action in which Plaintiff seeks judicial review of a

20 final decision of the Commissioner of Social Security denying

21 Plaintiff's application for benefits. Pursuant to 28 U.S.C. §

22 636(c), both parties have consented to the Magistrate's

23 jurisdiction to conduct all proceedings, including ordering the

24 entry of judgment. By order dated August 25, 2004, the case was

25 assigned to the undersigned Magistrate Judge to conduct all

26 further proceedings. The matter is currently before the Court on

27 the parties' briefs, which have been submitted without oral

28 argument to the Honorable Sandra M. Snyder, United States

1 Magistrate Judge.

2                          PRIOR PROCEEDINGS

3       On February 6, 2001, Plaintiff applied for Supplemental

4 Security Income (SSI), alleging disability based on idiopathic

5 scoliosis and disc degeneration. (A.R. at 20, 45-48.) Plaintiff's

6 claim of disability based on scoliosis, degenerated disc disease,

7 chronic obstructive pulmonary disease (COPD), and hepatitis was

8 denied initially and on reconsideration. (Id. at 30-35, 40-44.)

9 Plaintiff requested a hearing before an administrative law judge

10 (ALJ) of the Social Security Administration (SSA). On August 27,

11 2002, Plaintiff appeared with an attorney and testified before

12 the ALJ, Richard L. Leopold. (A.R. at 184, 186.) October 9, 2002,

13 the ALJ denied Plaintiff's application for benefits. (Id. at 20-

14 25.) Plaintiff appealed the ALJ's decision to the Appeals

15 Council. On February 25, 2004, the Appeals Council denied

16 Plaintiff's request for review. (Id. at 8-9.) Plaintiff alleged

17 in her unverified complaint that on April 27, 2004, her counsel

18 requested an extension of time in which to commence a civil

19 action.

20       On April 29, 2004, Plaintiff filed the complaint in the

21 instant action; the administrative record was lodged by Defendant

22 on August 23, 2004. On December 23, 2004, Plaintiff filed an

23 opening brief. On January 20, 2005, Defendant filed a brief in

24 opposition. No reply brief was filed.

25                       ADMINISTRATIVE FINDINGS

26       Plaintiff's impairments, including degenerative disc

27 disease, scoliosis, and lumbar disc protrusion, were severe

28 impairments, but Plaintiff did not have an impairment or

combination of impairments listed in, or medically equal to, one

listed in Appendix 1, Subpart P, Regulations Number 4.

Plaintiff's subjective complaints of disabling pain and

limitations were not credible and were rejected. Plaintiff's

residual functional capacity (RFC) was to perform medium work

activity that involved occasional climbing, balancing, stooping,

kneeling, crouching and overhead reaching; further, she had mild

limitations with attention/concentration, understanding/memory,

and pace; and she should not work around smoke, dust, or fumes.

Plaintiff's impairments did not prevent her from performing her

past relevant medium work as a bartender. Thus, she was not

disabled at any time through the date of decision.

<u>ISSUES PRESENTED</u>

Reference to the parties' briefs reveals that the following

issue is presented:

1) Did the ALJ articulate legally sufficient reasons (i.e.,

clear and convincing reasons), supported by substantial evidence,

to support his rejection of Plaintiff's subjective claims of

disabling pain and limitations?

2) In formulating his findings regarding Plaintiff's

residual functional capacity (RFC), did the ALJ fail to place

adequate weight on the medical findings and fail to articulate

adequate reasons for his conclusions?

<u>FACTS</u>

I. <u>Plaintiff's Testimony at the Hearing</u>

Plaintiff, born on February 2, 1961, was forty-one years old

at the time of the hearing. She graduated from high school, was

divorced, and lived with her two children, her boyfriend, and one

1  of his children.

2      On a usual day she awoke, watched TV, took medication, lay
3  down with a heating pad after being up for two hours, tried to
4  eat, and lay down several times throughout the day usually in a
5  dark room with the heating pad because of her head's hurting. She
6  watched TV and listened to the radio but had to get up and move
7  into a different position every twenty or thirty minutes. She
8  could not concentrate long enough to read. (Id. at 190-91.) She
9  did not go to church (A.R. at 191.)

10     At the hearing, her lower left back hurt down to her left
11 thigh, and there was pain in her spine where it curved up in her
12 left side by her left shoulder. (A.R. at 191.)

13     She had hepatitis. Either it or the Vicodin caused her to
14 throw up, have nausea, and be tired and weak all the time. The
15 Vicodin made her nauseated, constipated, and caused stomach
16 problems. She took Ducolax for the constipation but would end up
17 having diarrhea because she took too many. She had no appetite
18 and had lost twenty pounds in the last two years. The pain
19 medication subdued the pain a little bit. Lying down with the
20 heating pad with her legs elevated with the pillows underneath
21 them was the best position to lessen the pain. (A.R. at 190-92.)
22 She could not work because of her unbearable pain. She had pain
23 all day long even with the medication, but at times there was a
24 jamming pain going all the way down her spine to the middle of
25 her left leg that was unbearable and brought her to tears. (A.R.
26 at 192.) She wore a brace when she was up walking or sitting.
27 (A.R. at 193-94.) She had migraine headaches all the time every
28 day; she had told the doctor about it, and he had said that the

4

Vicodin should help. Five to six times a day, for about an hour at a time, she lay down in a dark room with the heating pad with all the blinds shut and no music. (Id. at 192-93.)

She barely slept at night because the pain was the worst then; she used a heating pad, pillows, and got up to take pain medication. (A.R. at 193.)

Her doctors did not mention surgery to her. She had not had an epidural yet. (A.R. at 194.)

She had been a bartender, making drinks, running the cash register, and stocking beer and alcohol bottles. She lifted forty pounds at the job. She was laid off six years before the hearing because she was missing too much work because she could not handle the job. (A.R. at 188-89.)

II. Testimony of the Vocational Expert (VE)

Lynne Tracy, who testified as a VE without objection from Plaintiff, testified that Plaintiff's past work of bartender, DOT 312.474-010, was performed as medium exertional work, low end of semi-skilled, SVP 3. (A.R. at 195.)

A person of Plaintiff's age and educational background who could perform medium work but was limited to occasional climbing, balancing, stooping, kneeling, crouching, crawling, and overhead reaching, with mild limitation on attention, concentration, understanding, memory, and pace, and who was precluded from working in an environment with frequent exposure to smoke, dust, or fumes, could perform Plaintiff's past relevant work. (A.R. at 195.)

For a person of the same age and education and who could perform medium work with occasional bending, stooping, or

kneeling, but who would miss one day of work per week, there was
no work that could be performed that existed in the national or
regional economy. (Id. at 196.)____

III. Medical History

Plaintiff was treated at the Tehachapi Hospital from
September 1, 2000 through February 10, 2001 (A.R. at 105-32).

On November 6, 2000, Plaintiff underwent a standing
scoliosis screening and a chest x-ray. Dr. Donald Cornforth
diagnosed rather severe lumbar levorotoscoliosis and compensatory
thoracic dextrorotoscoliosis, with early ankylosis scoliosis; and
significant midthoracic dextrorotoscoliosis. There was no evidence
of an acute cardiac or pulmonary condition. (A.R. at 132.)

On January 17, 2001, Appellant's chest was x-rayed again.
Dr. Frank Archibeque reported dextroscoliosis and hyperexpansion
of her lungs suggesting chronic obstructive lung disease; no
acute cardiopulmonary process was identified. (A.R. at 129, 170-
72.)

On February 5, 2001, a CT scan of the abdomen revealed a
normal abdomen; the liver was normal in size, position, contour,
and density. (A.R. at 119.)

Severe weight loss and hepatitis C were reported at the
radiology department on January 11, 2001, when Plaintiff appeared
for a CT screening of the abdomen and pelvis. (Id. at 116-117.)

On February 10, 2001, Plaintiff, who slipped on ice and
injured her back, was admitted to the Tehachapi Hospital. (A.R.
at 107-14.) X-rays of her lumbar spine revealed no evidence of a
fracture, but there was mild disc space narrowing at L5-S1 that
constituted degenerative disc changes. (A.R. at 114.) Her lower

lumbar muscles were tense, but she had good leg strength and walked well. She was prescribed Vicodin and Flexeril and was released. (A.R. at 109.)

Plaintiff was treated on five occasions at the Bakersfield Pain Medicine Center. (A.R. 153-56, 174-81.)

On March 2, 2001, Son Dinh, M.D., F.A.B.P.M., examined Plaintiff, who complained of continuous, sharp, aching and throbbing mid-back and low back pain, and pain radiating down the left buttock to the left posterior thigh, ending above the knee, which was exacerbated by coughing, sitting, standing, walking, stress, and physical activities. She denied fever, weight loss, night sweats, shortness of breath, or bleeding problems. He noted that her straight-leg testing was positive at thirty degrees on the left and at forty-five degrees on the right, and there was mild tenderness to palpation over the left lumbar musculature and sacral area. However, he found that she had a good range of motion in her lower extremities, full muscle strength in both ankles, normal deep tendon reflexes at her knees and ankles, and intact sensory exam in both feet. She had a stable gait and was able to walk on her toes and heels without difficulty. Her lungs had clear breath sounds bilaterally, and her heart was regular in rate and rhythm. Dr. Dinh diagnosed low and mid-back pain secondary to mid-thoracic scoliosis, and COPD. He decreased her Vicodin prescription, prescribed Neurontin and Soma, and recommended a lumbar MRI to evaluate disc disease. (A.R. at 155-56, 180-81.)

On March 20, 2001, Appellant underwent a magnetic resonance imaging ("MRI") scan of her lumbar spine, which Dr. Manjul Shah

reported revealed moderate levoscoliosis; a left lateral disc protrusion at L5-S1 that caused moderate left-sided foraminal stenosis but no canal stenosis; mild canal stenosis and left-sided foraminal stenosis at L4-5; and degenerative minimally bulging discs at L2-3 and L3-4 with no significant canal or foraminal stenosis at these levels. (A.R. at 175.)

Dr. Tomas B. Rios, a certified specialist in internal medicine, performed a comprehensive internal medicine evaluation at the request of the Commissioner on March 23, 2001. (A.R. at 134-38.) Plaintiff complained that her back pain had begun to increase two years before when she was trying to help push a boat into the water. She reported taking Vicodin five times a day and Soma regularly. She had pain in the lower thoracic and lumbar region with radiation into the left leg as well as pain in the upper back.

She used tobacco and had breathing difficulty, for which she used an inhaler as needed but had not required hospitalization for any acute exacerbation of her breathing problem. The exam revealed that despite deformity along the thoracic cage from the kyphoscoliosis, expansion was symmetric, lung fields were essentially clear, and there were no wheezes, rales, or rhonchi. There was no clubbing of the fingers of cyanosis.

Plaintiff reported having had hepatitis A, B, and C, attributable to intravenous drug use in the past, but she was on no medication for it.

She reported that she could drive and help with some household chores but not the heavier ones.

The examination revealed that despite thoracolumbar

scoliosis, she could ambulate briskly without any gait alteration and could get on and off the exam table unassisted. Romberg's testing was normal. She used no assistive device. Her dorsolumbar flexion was limited to seventy degrees, extension was ten degrees, and lateral flexion was twenty degrees; there was some hypertonicity of the paralumbar area. Straight leg raising while seated was up to ninety degrees without pain, but in supine position produced pain at thirty degrees on the left. Reflexes at the patella and Achilles were symmetric and brisk bilaterally at 3+. Motor strength was slightly reduced in the lower extremities at 4+/5 but in the upper extremities was 5/5; muscle bulk and tone were preserved and symmetric, and grip strength was adequately strong.

Dr. Rios diagnosed scoliosis, mechanical back pain, reactive airway disease, and a history of hepatitis B and C. Although Appellant had scoliosis, Dr. Rios opined that despite some dorsolumbar flexion/extension restriction and description of some lumbar radiculitis, her overall mobility was not significantly restricted, and there was no true impingement syndrome. She would have difficulty with activities requiring frequent bending, stooping, crouching, or crawling and could lift and carry no more than fifty pounds occasionally and twenty-five pounds frequently. (A.R. at 137.)

He opined that her periodic breathing difficulty was consistent with reactive airway disease responsive to inhaler therapy; there was no evidence of chronic hypoxic state. She could not work in an enclosed environment where there was frequent exposure to smoke, dust, or fumes. (Id.)

9

Dr. Rios also found that despite her history of hepatitis C, there was no significant liver compromise. (Id.)

On April 2, 2001, Plaintiff reported to Dr. Dinh continuing back pain radiating to the left knee and constipation from the Vicodin ES. He reviewed a lumbar MRI that revealed moderate levoscoliosis and lumbar disc protrusion. She reported that physical therapy in the past had not relieved her pain. She denied headaches, light-headedness, dizziness, visual changes, cough, difficulty swallowing, chest pain, or shortness of breath. He reexamined Appellant, finding a normal gait, lung sounds, and regular heart rhythm. Anterior flexion of the lumbar spine to forty-five degrees produced low back pain, and straight leg raising tests were positive to thirty degrees on the left and forty-five degree on the right; strength in the lower extremities was 5/5, and sensation to pinprick was intact in the bilateral lower extremities in the L4, L5, and S1 dermatomes. Palpation revealed tenderness over the thoracic and lumbar spine and lumbar paravertebral musculature bilaterally. His impression was mid-thoracic scoliosis with mid-back pain, levoscoliosis of the lumbar spine, lumbar disc protusion, and COPD. He recommended lumbar epidural steroid injections, but Appellant wanted to think about this particular treatment. For constipation he recommended a stool softener such as Colace daily, and for severe constipation, mineral oil 2 tsp. b.i.d. (A.R. at 178.)

State agency physician Arthur Jing, M.D., reviewed Plaintiff's medical records on April 26, 2001, with respect to diagnoses of back disorder, hepatitis, and COPD. (A.R. at 139-46.) Dr. Jing opined that she could lift twenty pounds

occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour day; sit about six hours in an eight-hour day; but was limited in her ability to push or pull with her lower extremities. Dr. Jing opined that she could occasionally climb, balance, stoop, kneel, crouch, and crawl. He further opined that she had no manipulative, visual, communicative, or environmental limitations. (<u>Id.</u>)

Dr. Dinh examined Plaintiff on May 10, 2001. (A.R. at 153.) Plaintiff complained of left lower back pain especially severe at night when trying to sleep. She denied nausea, headaches, light-headedness, dizziness, visual changes, cough, chest pain, or shortness of breath. Her physical condition was consistent with her two prior visits, except that anterior flexion was to sixty degrees producing left lower back pain. The impression was unchanged. Dr. Dinh again recommended epidural steroid injections, but Plaintiff again declined this form of treatment in favor of considering it in the future. Dr. Dinh planned to stop Vicodin because of the amount of Tylenol involved, and instead recommended Lortab and to continue Soma; Trazodone was prescribed for sleep. Follow-up was set for four months. (A.R. at 153, 177.)

On September 28, 2001, State agency physician Anna Khong, M.D., reviewed Plaintiff's medical records in connection with a primary diagnosis of acute backpain and scoliosis. (A.R. at 159-66.) Dr. Khong opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour day; sit about six hours in an eight-hour day; and had no limitations in her ability to push or

1  pull with her hands or feet. Dr. Khong also opined that Plaintiff

2  could occasionally climb, balance, stoop, kneel, crouch, and

3  crawl; the physician found that Plaintiff had no environmental

4  limitations. (Id.)

5      Plaintiff was examined by Dr. Dinh on October 17, 2001, five

6  months later. (A.R. at 176.) She complained of low back pain on

7  the left side radiating to the buttock and thigh, exacerbated by

8  standing for prolonged periods and increased physical activity.

9  She complained of difficulty sleeping; Trazodone caused her to

10 have a dry mouth, so she discontinued it but was willing to try a

11 different medication for sleep. She stated that despite Dr.

12 Dinh's repeated recommendation for epidural injections, she would

13 consider them in the future. Her physical condition upon

14 examination was unchanged, as were Dr. Dinh's impressions. She

15 was given a sample of Ambien for sleep, and a prescription was

16 offered if it helped. She was also given a prescription for

17 elastic lumbar support, which she had requested for pain relief.

18 Lortab and Soma were continued, and follow-up was scheduled for

19 six months. (Id.)

20      Dr. Juliane C. Tran reported on June 20, 2002, that

21 Plaintiff reported back pain radiating to her thigh that worsened

22 with activity but was relieved with supine position. She denied

23 lightheadedness, visual changes, cough, difficulty swallowing,

24 chest pain, or shortness of breath. A physical exam revealed her

25 condition to be unchanged; the impression remained scoliosis,

26 lumbar disc protrusion, and COPD. Dr. Tran ordered Vicodin and

27 Soma, and stated that epidural injection might help and that she

28 would be scheduled for an injection. (A.R. at 174.)

1    On August 26, 2002, Drs. Dinh and Tran completed a medical

2    source statement indicating that Plaintiff could lift and carry

3    twenty pounds occasionally, ten pounds or less frequently, stand

4    at least two hours of an eight-hour day; must alternate as to

5    sitting continuously with normal breaks during an eight-hour day;

6    engage in unlimited pushing and pulling, including hand and/or

7    foot controls; could not frequently bend, stoop, or kneel, and

8    that these limitations hat existed since 1998. They stated that

9    the limitations would likely disrupt a regular job schedule with

10   low physical demands for 100 to 120 hours per months. (A.R. at

11   181.)

12                SCOPE AND STANDARD OF REVIEW

13   Congress has provided a limited scope of judicial review of

14   the Commissioner's decision to deny benefits under the Act. In

15   reviewing findings of fact with respect to such determinations,

16   the Court must determine whether the decision of the Commissioner

17   is supported by substantial evidence. 42 U.S.C. § 405(g).

18   Substantial evidence means "more than a mere scintilla,"

19   Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a

20   preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10

21   (9th Cir. 1975). It is "such relevant evidence as a reasonable

22   mind might accept as adequate to support a conclusion."

23   Richardson, 402 U.S. at 401. The Court must consider the record

24   as a whole, weighing both the evidence that supports and the

25   evidence that detracts from the Commissioner's conclusion; it may

26   not simply isolate a portion of evidence that supports the

27   decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

28   It is immaterial that the evidence would support a finding

13

contrary to that reached by the Commissioner; the determination
of the Commissioner as to a factual matter will stand if
supported by substantial evidence because it is the
Commissioner's job, and not the Court's, to resolve conflicts in
the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th
Cir. 1975).

In weighing the evidence and making findings, the
Commissioner must apply the proper legal standards. Burkhart v.
Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must
review the whole record and uphold the Commissioner's
determination that the claimant is not disabled if the Secretary
applied the proper legal standards, and if the Commissioner's
findings are supported by substantial evidence. See, Sanchez v.
Secretary of Health and Human Services, 812 F.2d 509, 510 (9th
Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court
concludes that the ALJ did not use the proper legal standard, the
matter will be remanded to permit application of the appropriate
standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th Cir. 1987).

ANALYSIS

I. Disability

In order to qualify for benefits, a claimant must establish
that she is unable to engage in substantial gainful activity due
to a medically determinable physical or mental impairment which
has lasted or can be expected to last for a continuous period of
not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A
claimant must demonstrate a physical or mental impairment of such
severity that the claimant is not only unable to do the
claimant's previous work, but cannot, considering age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy. See 20 C.F.R. §

1  416.920.[1]

2      II. <u>Rejection of Plaintiff's Subjective Complaints</u>

3      Plaintiff argues that in connection with formulating

4  Plaintiff's RFC, the ALJ's rejection of Plaintiff's subjective

5  complaints of unremitting and disabling pain was inadequate

6  because not supported by clear and convincing reasons.

7  Specifically, Plaintiff attacks the conclusion that her

8  activities of daily living were inconsistent with disabling pain,

9  contending that the evidence establishes that she could not

10 maintain work activity on a continuous basis; further, the ALJ

11 simply ignored relevant findings.

12     The ALJ rejected Plaintiff's "allegations of unremitting

13 pain and disability," (A.R. at 24), concluding that her

14 complaints were not found to be fully credible or reliable,

15 (<u>id.</u>). The ALJ reasoned as follows:

16     The documentary evidence before me holds no indication
    that the claimant sought or engaged in any significant
17    therapy which has not provided some relief, that the
    claimant requires the significant or consistent use of
18    assistive devices, or that there are any significantly
    negative side effects from any medications she is
19    taking which are not treatable. The record does not
    substantiate the claimant's allegations of disability,
20    and does not contain evidence, which corresponds
    to her allegedly disabling impairments. For instance,
21    there is no evidence of significant disuse of the arms,
    appropriate muscle atrophy, significant weight loss
22    from loss of appetite due to pain, severe sleep deprivation
    due to pain, or attention, concentration or cognitive
23    deficits due to pain.
    The claimant has made various inconsistent statements,
24    which have detracted from her overall credibility. For
    instance, despite her allegations of unremitting pain
25    and disability, the claimant admitted she has been able
    to engage in such activities as caring for her personal
26    needs, performing light housekeeping chores, dusting,
    laundry, cooking and going shopping. These factors have

27

28      [1] Reference is to the 2002 version of the Code of Federal Regulations unless otherwise indicated.

16

been taken into account in the weighing of the claimant's
credibility and assertions of total "disability."

(A.R. at 24.)

Because expert opinion evidence existed demonstrating that
Plaintiff suffered an underlying medically determinable physical
or mental impairment that could reasonably be expected to produce
pain or other symptoms, and because there was no evidence of
malingering, the ALJ was required to state clear and convincing
reasons for rejecting the Plaintiff's subjective complaints and
to set forth the rejection by identifying what testimony was not
credible and what evidence undermined the claimant's complaints.
Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). The findings
of the adjudicator must be properly supported by the record and
must be sufficiently specific to allow a reviewing court to
conclude that the adjudicator rejected the claimant's testimony
on permissible grounds and did not arbitrarily discredit a
claimant's testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-46
(discussing subjective complaints of pain); Byrnes v. Shalala, 60
F.3d at 641-42 (9th Cir. 1995) (discussing subjective complaints
of uncontrollable diabetic episodes); see 20 C.F.R. § 416.929(c).
Social Security Ruling 96-7p directs the adjudicator to consider
not only objective medical evidence of signs, laboratory
findings, and medical opinions, but also the following factors
when assessing the credibility of an individual's statements:

    1. The individual's daily activities;
    2. The location, duration, frequency, and intensity
       of the individual's pain or other symptoms;
    3. Factors that precipitate and aggravate the symptoms;
    4. The type, dosage, effectiveness, and adverse
       side effects of any medication for pain or other
       symptoms;
    5. Treatment, other than medication, for relief of

```
          pain or other symptoms;
      6. Any measures other than treatment used by the
          individual to relieve the pain or other symptoms; and
      7. Any other factors concerning the individual's
          functional limitations and restrictions due to
          pain or other symptoms.
```

Here, in support of his rejection of Plaintiff's subjective complaints, the ALJ set forth numerous reasons that were supported by substantial evidence in the record and were clear and convincing in probative force.

The ALJ properly considered factors such as Plaintiff's daily activities, whether her treatment was conservative, and lack of objective medical findings. Soc. Sec. Ruling 96-7p and 20 C.F.R. § 416.929(c)(4)(1)(vii); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996); <u>Bunnell v. Sullivan</u>, 947 F.2d at 346 (9th Cir. 1991). He noted Plaintiff's relatively conservative treatment and that it had provided some relief. This is supported by the relative infrequency of her doctor visits and her use of pain medication, heat, adjustment of position, and a lumbar support, which she reported reduced her pain. It is undisputed that she repeatedly declined to take the epidural injections that were consistently recommended for pain; no reason for her refusal appears in the record. The ALJ noted her lack of need for assistive devices; it is likewise undisputed that she did not require any assistive devices. He relied on the lack of significantly negative side-effects from medication. The record shows that she did not report to the medical experts side-effects other than constipation, for which treatment was possible, and dry mouth, which precipitated prescription of an alternate medication for pain.

1    The ALJ also noted the lack of record evidence

2  substantiating her claim of disability. The record supports his

3  statement that there was no evidence of significant disuse of the

4  arms or appropriate muscle atrophy. Further, he noted that there

5  had been no significant weight loss from pain. Although she had

6  reported severe weight loss, the record shows that on February

7  10, 2001, she denied unexplained weight loss (A.R. at 112);

8  between March 2, 2001, and June 20, 2002, although her weight

9  fluctuated during that period in a seven-pound range (A.R. at

10 155, 135, 178, 177, 176, 174), she lost one pound overall (117

11 pounds to 116 pounds), (id. at 155, 174). Thus, the record

12 supports his reasoning. Although she did report pain at night

13 once to her treating doctor, she obtained a prescription for

14 sleep. The record supports the ALJ's conclusion that there was no

15 record evidence, aside from Plaintiff's subjective complaints, of

16 attention, concentration, or cognitive deficit due to pain. These

17 reasons are all clear and convincing.

18    The ALJ also relied on Plaintiff's having made inconsistent

19 statements, and the one instance he noted was her admissions that

20 she could care for her personal needs, perform light housekeeping

21 chores, dust, do laundry, cook, and go shopping. (A.R. at 24.)

22 Plaintiff argues that the extent to which she could perform these

23 tasks was not sufficient to demonstrate that she could engage in

24 sustained work activity. However, the ALJ did not directly rely

25 on her conduct as evidence supporting a conclusion that she could

26 engage in sustained work activity. Instead, he mentioned it as an

27 example of the inconsistencies in her statements. She testified

28 to daily activities dominated by unremitting pain that required

her to retreat to a darkened room from activities such as watching TV and listening to the radio, (A.R. at 189-90, 192-93); however, she reported to Dr. Rios in March 2001 that she could drive and help with household chores except for the heavy ones, (A.R. at 135); in November 2001 she admitted that she could help her children with their homework, do light cooking, accompany her boyfriend on shopping outings, dust, do dishes, put clothes in the washer, and pick up around the house, although she needed help to mop the floor, scrub the bathroom and toilets and sink, or do heavy duty cleaning. (A.R. at 55-57.) The record further supports the more general conclusion by the ALJ that there were various inconsistent statements. For example, she testified that she had almost constant, disabling headaches and that she had reported them to her doctor. (A.R. at 192-93.) However, there is no record of a report of headaches; indeed, she repeatedly denied headaches in her reports to her treating physician. (A.R. at 178, 153.) Likewise, she did not report constant fatigue and weakness, nausea, and vomiting.

Included in the factors that an ALJ may consider in weighing a claimant's credibility are inconsistencies either in the claimant's testimony or between the claimant's testimony and the claimant's conduct, daily activities, or work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may consider whether the Plaintiff's testimony is believable or not. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999). In rejecting testimony regarding subjective

1  symptoms, permissible grounds include internal contradictions in

2  the testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

3  2004). The ALJ here properly relied on the inconsistency of

4  Plaintiff's statements.

5      In the present case, although there might have been factors

6  supporting Plaintiff's credibility, the ALJ nevertheless

7  articulated clear and convincing reasons, supported by

8  substantial evidence, for discrediting Plaintiff's subjective

9  complaints of pain. Cf. Batson v. Commissioner of the Social

10  Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004).

11      Plaintiff complains that the ALJ did not credit the opinion

12  of Dr. Dinh, the treating physician, regarding the disabling

13  nature of Plaintiff's pain.

14      An ALJ may disregard a treating physician's opinion that is

15  controverted by other opinions only by setting forth specific,

16  legitimate reasons for doing so that are based on substantial

17  evidence in the record. Rodriguez v. Bowen, 876 F.2d 759, 762

18  (9th Cir. 1989). This burden is met by stating a detailed and

19  thorough summary of the facts and conflicting clinical evidence,

20  stating the interpretation of the evidence, and making findings.

21  Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir 1986).

22      Here, the ALJ expressly cited to Dr. Dinh's source statement

23  regarding RFC (A.R. at 181); he reasoned that Dr. Dinh did not

24  take into account all the factors that the ALJ had to consider,

25  he noted that there was a lack of accompanying objective evidence

26  to support Dr. Dinh's assessment, and he concluded that in view

27  of the overall record, Dr. Dinh's opinion was not persuasive

28  because contradictory to the evidence of record, (id. at 23). The

opinions of the other physicians supported the ALJ's conclusion
regarding the state of the evidence of record. Although Plaintiff
had impairments and suffered pain, the objective medical evidence
did not support limitations to the claimed extent. Further, it
appears that Dr. Dinh's opinions regarding the <u>extent</u> of
Plaintiff's limitations and the resulting RFC were primarily
based on Plaintiff's subjective complaints as distinct from the
objective evidence. Where the record supports an ALJ's rejection
of the claimant's credibility as to subjective complaints, the
ALJ is free to disregard a doctor's opinion that was premised
upon the claimant's subjective complaints. <u>Tonapetyan v. Halter</u>,
242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ detailed the facts,
including the conflicting medical evidence, and stated the
required specific and legitimate reasons for rejecting the
treating physicians' opinion.

In summary, after review of Plaintiff's contentions, it is
concluded that the ALJ's conclusion regarding Plaintiff's RFC was
made pursuant to appropriate legal standards and was supported by
substantial evidence.

<u>DISPOSITION</u>

Accordingly, the Court AFFIRMS the administrative decision
of the Defendant Commissioner of Social Security and DENIES
Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for
Defendant Jo Anne B. Barnhart, Commissioner of Social Security,
and against Plaintiff Linda M. Lewis.

IT IS SO ORDERED.

**Dated:   August 25, 2005            /s/ Sandra M. Snyder**

1    icido3                                    UNITED STATES MAGISTRATE JUDGE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28